FILED

JUL 14 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )    BAP No.   NC-16-1070-FBJu
                                          )
JAMES PAUL GARRETT,                       )    Bk. No.   14-41630
                                          )
                Debtor.                   )    Adv. Pro. 14-04090
_____           )
                                          )
NOBANTU ANKOANDA,                         )
                                          )
                Appellant,                )
                                          )
v.                                        )    **MEMORANDUM**[*]
                                          )
JAMES PAUL GARRETT,                       )
                                          )
                Appellee.                 )
_____           )

Submitted Without Argument on June 22, 2017

Filed – July 14, 2017

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Charles D. Novak, Bankruptcy Judge, Presiding

Appearances:     David L. Olson on brief for appellant Nobantu
                 Ankoanda; appellee James Paul Garrett, pro se, on
                 brief.

Before: FARIS, BRAND, and JURY, Bankruptcy Judges.

---

   [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Appellant Nobantu Ankoanda appeals from the bankruptcy court's judgment in favor of chapter 7[1] debtor James Paul Garrett on her nondischargeability claim. Ms. Ankoanda failed to make any reasonable effort to carry her burden of proof under § 523(a)(2), and she waived any claims under §§ 523(a)(4) and (6). Accordingly, we AFFIRM.

## FACTUAL BACKGROUND

Mr. Garrett, an attorney licensed to practice law in California, provided legal services to Ms. Ankoanda regarding trust matters. Around 2004, Mr. Garrett told Ms. Ankoanda that he needed $100,000 for a down payment to purchase real property located in Oakland, California (the "Oakland Property").

The parties did not document the transaction, and Ms. Ankoanda later gave conflicting testimony about its nature. At one point, she testified that the money was payment for Mr. Garrett's legal services, but she also said that it was a "temporary loan." Whatever the case, Ms. Ankoanda borrowed money against her real property located in East Palo Alto, California and used $100,000 as a down payment to purchase the Oakland Property. She took title to the Oakland Property.

According to Ms. Ankoanda, she was supposed to transfer the Oakland Property to Mr. Garrett's "business associates," who would refinance the Oakland Property and use the proceeds to

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

repay Ms. Ankoanda's loan. The business associates took title to the Oakland Property, refinanced it, and got $115,000 in cash. However, Ms. Ankoanda said that she only received $10,000 from the transaction, while Mr. Garrett kept the remainder. Mr. Garrett currently resides at the Oakland Property.

In 2007, Ms. Ankoanda sued Mr. Garrett and others in state court (the "State Court Action") for fraud. On the day of trial, before the trial court received any testimony, Ms. Ankoanda and Mr. Garrett reached a settlement of the State Court Action. Mr. Garrett agreed to make a lump sum payment of $200,000 to Ms. Ankoanda within a year. He agreed to sign a promissory note and a deed of trust on the Oakland Property.[2]

Mr. Garrett apparently never signed a promissory note or deed of trust and failed to pay the debt when due. Ms. Ankoanda filed a second complaint against him in state court to enforce the settlement.

On March 16, 2014, Mr. Garrett filed a chapter 7 petition in the bankruptcy court for the Northern District of California. Ms. Ankoanda initiated an adversary proceeding against Mr. Garrett. In her complaint, she offered a brief recitation of the facts and requested that the court deny dischargeability of his debt to her. She did not identify any particular statutory authority.

On January 20, 2016, the bankruptcy court held a trial on Ms. Ankoanda's complaint. Ms. Ankoanda was the only witness; as

---

[2] The parties did not reduce the settlement agreement to writing. The terms of the settlement agreement were orally placed on the record before the state court.

3

the bankruptcy court noted, her testimony was difficult to follow. She failed to identify Mr. Garrett's so-called "business associates" and gave conflicting testimony regarding the nature of her transaction with Mr. Garrett, her contact with the business associates, and what representations might be attributable to Mr. Garrett or the business associates. She did not introduce any documents evidencing any of the relevant transactions. Mr. Garrett did not testify.

At the conclusion of Ms. Ankoanda's testimony, her counsel stated, in response to the bankruptcy court's questions, that she relied solely on § 523(a)(2).

The court asked both parties to discuss the elements of a § 523(a)(2) claim. Both parties repeatedly referred to the settlement in the State Court Action, but the court explained that the settlement was not sufficient on its own to prove fraud. When neither Ms. Ankoanda's counsel nor Mr. Garrett could satisfactorily answer the court's questions, it commented, "Does anyone understand what a 523(a)(2) claim is here? I'm beginning to suspect not." It questioned why neither party had provided evidence to substantiate their respective positions and stated, "I'm just, again, I guess expressing some frustration here at the level of evidence that's been presented."

On February 2, 2016, the bankruptcy court issued its Decision After Trial. It held that Ms. Ankoanda did not meet her burden of proof regarding § 523(a)(2)(A) because she failed to "demonstrate by a preponderance of the evidence exactly what representations Garrett made to her regarding repayment of the loan (in contrast to her testimony regarding the representations

4

made by the 'business associates'), or the exact nature of [Mr.] Garrett's relationship with his alleged 'business associates.'" It found her testimony "inconsistent at best" and stated that it could not determine if Mr. Garrett should be held liable for the business associates' statements.

The bankruptcy court also held that Ms. Ankoanda's judicial estoppel argument (contending that Mr. Garrett was estoped from denying the facts that she alleged in the State Court Action) failed because Mr. Garrett had consistently denied liability in both the state court and bankruptcy court. The bankruptcy court also ruled that issue preclusion did not apply.

The bankruptcy court issued its judgment in favor of Mr. Garrett on February 2, 2016, and Ms. Ankoanda timely appealed.

### JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

### ISSUE

Whether the bankruptcy court erred in determining that Mr. Garrett's obligation to Ms. Ankoanda was not excepted from discharge under § 523(a)(2).

### STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact after a trial for clear error and conclusions of law de novo, and apply de novo review to mixed questions of law and fact. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 F. App'x 176 (9th Cir. 2010) (citation omitted).

5

De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988).

We review the bankruptcy court's findings of fact for clear error. See Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011); see also Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1283 (9th Cir. 1996) ("A finding of whether a requisite element of section [ ] 523(a)(2)(A) claim is present is a factual determination reviewed for clear error."). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.), 262 F.3d 725, 729 (8th Cir. 2001) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)); see Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed."). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003).

**DISCUSSION**

**A.  Ms. Ankoanda failed to carry her burden of proof under § 523(a)(2).**

Section 523(a)(2)(A) excepts from discharge any debt for money, property, services, or credit obtained by false pretenses,

false representations, or actual fraud.[3]  Ms. Ankoanda argues that Mr. Garrett's $200,000 debt is nondischargeable under § 523(a)(2)(A) because of his allegedly fraudulent statements. She does not articulate any reversible error.

Ms. Ankoanda did not come close to meeting her burden of proof at trial.  At most, she proved that Mr. Garrett promised to pay her $200,000 and to sign a promissory note and deed of trust but did none of those things.  As the bankruptcy court correctly observed, she did not prove that Mr. Garrett made any representations to her or that any representations made by the "business associates" were attributable to him.  We also note that she offered no evidence at all, direct or circumstantial, supporting any of the other elements of § 523(a)(2)(A).

In sum, there was a complete failure of proof.  The bankruptcy court did not err.

---

[3] To establish fraud under § 523(a)(2)(A), the creditor must prove each of the following elements by a preponderance of the evidence:

(1) the debtor made . . . representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; [and]

(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010) (citations omitted).

7

**B.    Ms. Ankoanda cannot rely on judicial estoppel or issue preclusion.**

Ms. Ankoanda argues that the settlement of the State Court Action was sufficient to sustain her nondischargeability claim. She is wrong.

The legal basis for Ms. Ankoanda's argument was unclear at best. In her trial brief, she invoked judicial estoppel; in her oral argument at trial, she argued for issue preclusion; elsewhere, she referred to "collateral judicial estoppel," a doctrine unknown to us.

We agree with the bankruptcy court that Ms. Ankoanda argued for issue preclusion, rather than judicial estoppel. But she could not prevail under either doctrine.

The doctrine of judicial estoppel is informed by several factors: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. <u>Ah Quin v. Cty. of Kauai Dep't of Transp.</u>, 733 F.3d 267, 270 (9th Cir. 2013).[4] Mr. Garrett never changed

_____

[4] Federal courts apply federal principles of judicial estoppel, even when based on statements made in other tribunals. <u>Rissetto v. Plumbers & Steamfitters Local 343</u>, 94 F.3d 597, 603 (9th Cir. 1996).

8

his position; he always denied liability to Ms. Ankoanda. His agreement to pay her in the settlement agreement did not include an admission of any facts.[5] Further, he was not successful in the State Court Action. He agreed to pay $200,000 to settle claims arising out of a $100,000 loan, which is hardly a favorable outcome for him, and the state court did not determine that any of his assertions were true.

Similarly, issue preclusion did not apply. That doctrine comes into play only when: (1) the issues to be precluded are identical to the ones decided in the prior proceeding; (2) the issues were actually litigated in the prior proceeding; (3) the issues were necessarily decided; (4) the decision was final and on the merits; and (5) the party to be precluded was identical to or in privity with a party to the prior proceeding. See Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 104 (9th Cir. BAP 2007) (applying California law). Ms. Ankoanda failed to offer evidence that the state court issued a judgment, or that any issues were litigated or decided.

**C. Ms. Ankoanda waived her claims of nondischargeability under §§ 523(a)(4) and (6) at trial.**

Ms. Ankoanda argues that her claims are not dischargeable

---

[5] Ms. Ankoanda seems to think that, because the parties agreed to settle, all of her allegations in her State Court Action complaint are automatically admitted as true. She relies on City of Lodi v. Randtron, 118 Cal. App. 4th 337, 350 n.18 (2004), and Rissetto, 94 F.3d at 605, but those cases are distinguishable because the parties had expressly stipulated to a fact in a prior case. The transcript of the State Court Action hearing to memorialize the settlement does not reveal that Mr. Garrett stipulated to or admitted anything.

9

under §§ 523(a)(4) and (6). We reject this argument.

Ms. Ankoanda waived these claims at trial. In response to the court's question, her counsel only identified § 523(a)(2) as the basis for her nondischargeability claim. Thus, she waived subsections (a)(4) and (6). See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989) ("appellate courts will not consider arguments that are not 'properly raise[d]' in the trial courts").

Even if she had not waived those claims, she did not carry her burden of proof under either subsection.

Section § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" The creditor must establish: "(1) an express trust; (2) that the debt was caused by fraud or defalcation; and (3) that the debtor was a fiduciary to the creditor at the time the debt was created." Nahman v. Jacks (In re Jacks), 266 B.R. 728, 735 (9th Cir. BAP 2001) (citation omitted). Additionally, the creditor must establish a culpable state of mind. Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1757 (2013) (holding that defalcation requires a "culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior"). Ms. Ankoanda did not offer any evidence that Mr. Garrett acted in a "fiduciary capacity" (i.e., as trustee of an express trust) or that he had the mental state required for "fraud or defalcation."

Section 523(a)(6) excepts from discharge debts for "willful and malicious injury" by the debtor to another. "Willful" means

10

that the debtor entertained "a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." <u>Petralia v. Jercich (In re Jercich)</u>, 238 F.3d 1202, 1208 (9th Cir. 2001). Maliciousness is defined as "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) done without just cause or excuse." <u>Id.</u> at 1209. Ms Ankoanda offered no direct or circumstantial evidence that Mr. Garrett intended to injure her or that he knew that his actions were substantially certain to injure her.

**CONCLUSION**

The bankruptcy court did not err. Accordingly, we AFFIRM.

11